UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GAYLE DICHIARA,

        Plaintiff,

v.

KENNETH PELSINGER,

        Defendant/Judgment Debtor.

3:08-cv-1038 (CSH)

**RULING ON DEFENDANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT AND ON PLAINTIFF'S MOTION FOR SANCTIONS**

HAIGHT, Senior District Judge:

    Now pending is a motion pursuant to Federal Rules of Civil Procedure 55(c) and 60(b) by Defendant Kenneth Pelsinger, an attorney proceeding *pro se*, to set aside the default judgment of $10,185.73 that was entered against him on July 13, 2009, and to vacate the warrant for his arrest issued on March 31, 2010 in light of his failure to comply with post-judgment discovery notwithstanding a court order that he do so, and his failure to appear in court as ordered. Defendant's Motion to Set Aside the Default Judgment [Doc. 28] is DENIED because the default was willful and intentional. Also pending is Plaintiff Gayle DiChiara's Motion for Sanctions[1] [Doc. 20], which is GRANTED IN PART in light of the evidence that Defendant was aware of the judgment against him, yet evaded all attempts to collect it until he was faced with arrest. Execution of the arrest warrant was stayed during the pendency of the instant motion by Defendant to set aside the default judgment. The stay shall remain in place during the period

---

[1] Plaintiff's Motion for Sanctions also included a Motion for an Order to Show Cause, which was granted on March 2, 2010 when the Order to Show Cause was issued. [Doc. 21]

designated herein for Defendant's compliance with the procedures set forth in this Ruling for collection of the judgment, and the warrant shall be vacated only upon Defendant's full and timely compliance, as ordered herein, failing which it will be executed.

Background

This case was filed on July 14, 2008, alleging that Defendant Kenneth Pelsinger violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a, in sending a collection letter to Plaintiff Gayle DiChiara. [Doc. 1]  On December 8, 2008, following proper service, default was entered against Defendant pursuant to Federal Rule of Civil Procedure 55(a). [Doc. 8]  On May 18, 2009, default judgment as to liability was entered against Defendant for failure to appear and defend, and the case was referred to Magistrate Judge Joan G. Margolis for a hearing on damages. [Doc. 12]  After a hearing before Judge Margolis at which Defendant did not appear despite notice being given, a default judgment in the amount of $10,185.73 was entered against Defendant on July 13, 2009. [Doc. 17]

On October 30, 2009, Plaintiff moved to compel Defendant to respond to Plaintiff's post-judgment discovery requests seeking information about Defendant's income and assets in order to enforce the judgment. [Doc. 18]  That motion to compel was granted on November 24, 2009, and Defendant was ordered to respond by December 24, 2009 [Doc. 19], which he did not do. On January 16, 2010, Plaintiff filed the instant motion for sanctions against Defendant for his failure to pay the judgment and for his failure to comply with the Court's order that he respond to post-judgment discovery. [Doc. 20]  Specifically, Plaintiff requested that the Court find Defendant in civil contempt, issue a warrant for Defendant's arrest, impose upon Defendant a

fine of up to $1,000 for every day after the Court's order that Defendant failed to comply therewith, and award Plaintiff her costs and fees in maintaining the proceeding, to the extent they were not included in the previous judgment. *Id.*

On March 2, 2010, this Court issued an Order to Show Cause [Doc. 21] why the Court should not grant Plaintiff's Motion for Sanctions. The Order to Show Cause set forth the relief that Plaintiff sought, including but not limited to Defendant's arrest, so that Defendant was aware of the potential consequences should he fail to appear. *Id.* The Court required Plaintiff to serve the Order to Show Cause on Defendant "in the manner previously utilized for service of the summons and complaint," *Id.*, and to certify to the Court that she had done so, and she complied. [Docs. 22 & 23] On March 30, 2010, Defendant failed to appear for that duly-noticed hearing. [Doc. 24] Therefore, a warrant for his arrest was issued on March 31, 2010. When contacted by a United States Marshal pursuant to that warrant, Defendant called this Court's chambers, expressing his desire to be heard.

While Defendant's request was clearly untimely, the Court stayed the execution of the arrest warrant to permit Defendant to be heard. On April 5, 2010, the Court noticed a hearing for April 12, 2010. [Doc. 26] On April 12, 2010, Defendant appeared for the hearing, filed a *pro se* appearance, and filed the instant motion to set aside the default judgment and to vacate the arrest warrant, which was taken under advisement. [Docs. 27-29] Thereafter, Plaintiff filed a response and Defendant filed a reply. [Docs. 31 & 32]

<u>Motion to Set Aside Default</u>

Defendant moves pursuant to Federal Rules of Civil Procedure 55(c), 60(b)(1) and 60(b)(4) to set aside the default judgment of $10,185.73 that was entered against him on July 13,

2009. Rule 55(c) provides that the Court "may set aside a default judgment under Rule 60(b)."[2]
Rule 60(b) provides that the Court may relieve a party from a final judgment for (1) "mistake, inadvertence, surprise, or excusable neglect," or (4) because "the judgment is void." Because Defendant relies solely on sections (1) and (4) of Rule 60(b), they are the only sections discussed herein.

In applying Rule 60(b)(1) in the context of default judgments, courts must evaluate "(1) whether the default was willful; (2) whether defendant has a meritorious defense; and (3) the level of prejudice that may occur to the non-defaulting party if relief is granted." *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983) (citations omitted). "Amongst these elements, willfulness is preeminent, and a willful default will not normally be set aside." *Heymann v. Brechner*, 1996 U.S. Dist. LEXIS 14936 at *10 (S.D.N.Y. Oct. 7, 1996) (citations omitted). Defendant maintains that "the default was not willful, but rather the result of improper service and the fact that Defendant never received the initial papers and other papers and filings in this action." [Doc. 32 at ¶ 9] Defendant contends that Progressive "stole my identity and misrepresented itself to Plaintiff by using my name without my consent, knowledge, authority or permission in the underlying collection matter." [Doc. 32 at ¶ 4]

Defendant states in his affidavit that he "first became aware of the serious nature, the progress of the within suit and that a judgment was entered against me when I was contacted by the United States Marshal and advised that an arrest warrant was issued against me." (Def.'s

---

[2] Defendant moves to set aside the default "for good cause pursuant to Rule 55(c)." [Doc. 28 at 2] However, under Rule 55(c), only an entry of default pursuant to 55(a) can be set aside for good cause; if, as here, a final judgment of default has entered pursuant to Rule 55(b), then Rule 55(c) refers to Rule 60(b) for the grounds for relief from that final judgment.

Affid. ¶ 6) [Doc. 28]  Thus, Defendant avers unequivocally that he first became aware that a judgment had entered against him when he was contacted by a Marshal about the arrest warrant on or about March 31, 2010.  However, Defendant's own exhibits make clear that this is untrue and that Defendant was aware of the July 13, 2009 default judgment against him no later than August 13, 2009.  Defendant appended as Exhibit D to his Reply brief in this matter a copy of the complaint in a lawsuit captioned *Kenneth S. Pelsinger, Esq. v. Progressive Portfolio Management, Inc.*, which he filed in the Supreme Court of the State of New York, County of Nassau, on August 13, 2009.[3]  [Doc. 32, Ex. D]  That August 2009 complaint states, "Recently, plaintiff discovered that a money judgment was procured against him upon default in the State of Connecticut in the approximate amount of $12,000.00 based upon allegations by the plaintiff in that action that [Progressive] utilized [Pelsinger's] name and status as an attorney to threaten, bully and otherwise illegally exact money from the plaintiff therein without [Pelsinger's] knowledge or consent." [Doc. 32, Ex. D, ¶ 6]  To that complaint was appended a sworn certification by Pelsinger that he had read the complaint and that it was true and accurate. [Doc. 32, Ex. D]  It is simply not credible that Pelsinger first learned of the judgment against him in March 2010, when his August 2009 New York state court complaint specifically references the same default judgment.  Despite his documented awareness of the judgment, Defendant refused to comply with the Court's orders attempting to enforce it, and failed to appear and move to set aside that default until threatened with arrest.

    Additional evidence of Defendant's awareness of the proceedings against him can be

---

[3] According to Pelsinger, his New York case "is still pending in the early stages of litigation." [Doc. 32 at ¶ 4]

found in his September 6, 2008 letter to the State of New York Grievance Committee, also attached as an exhibit to his Reply. In that letter, he states, "I called Ms. Faulkner[] multiple times to advise her that I never wrote, called nor allowed anyone to call her client or any other individual on any collection(s) matters." [Doc. 32, Ex. C] Thus, he admits that he was in communication as early as September 2008 with Plaintiff's counsel, Joanne Faulkner, regarding Plaintiff's claims in this matter, the complaint regarding which was filed on July 14, 2008. In fact, it appears that Defendant was aware of Plaintiff's claims against him even before the suit was brought. He states that "once I became aware of Plaintiff's claim, I immediately contacted her attorney and advised her that any lawsuit brought against me is frivolous," but "Plaintiff disregarded my advice and commenced her frivolous suit against me without naming the necessary and real culpable party at fault, Progressive Portfolio Management ("Progressive")." [Doc. 32 at ¶ 2] Despite his admitted knowledge of the proceedings, he did not file an appearance or take any action to assert the defenses he now seeks to raise until nearly two years had passed.

Nor can Defendant succeed in his claim that the judgment is void for lack of personal jurisdiction because he was never properly served. The record regarding Plaintiff's service of process on Defendant shows that Nancy F. Marino, a Connecticut State Marshal, served the nonresident Defendant, Kenneth Pelsinger, on August 25, 2008 "by leaving a verified true and attested copy of the within original Federal Summons and Complaint, with and in the hands of the clerk in charge of the office of Susan Bysiewicz, Secretary of State for the State of Connecticut. Said Secretary of State is the duly authorized agent to accept service for the within named defendant, in the Town of Hartford." [Doc. 4] On August 25, 2008, Ms. Marino also

"deposited in the Post Office in Hartford, postage paid and certified, return receipt requested, a verified true and attested copy of the within original Federal Summons and Complaint, with my doings thereon endorsed, addressed to the within named defendant, Kenneth Pelsinger, 1900 Hempstead Tpke. #304, East Meadow, NY 11554-1702." *Id.* Ms. Marino received the return receipt signed by Corinne Giorgio on August 27, 2008, which was subsequently filed as a Supplemental Return of Service. [Doc. 5] *See Goktepe v. Lawrence*, 220 F.R.D. 8 (D. Conn. 2004) (approving identical method of service by Plaintiff's counsel, through Ms. Marino, on another nonresident lawyer defendant, as meeting the requirements of Federal Rule of Civil Procedure 4 and Connecticut's long-arm statute, Conn. Gen. Stat. § 52-59b(c)).

Because, as discussed above, Defendant had actual notice of the proceedings, he bears the burden of proving that service did not occur. "[O]n a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur." *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005) (citations omitted). Defendant complains that he "was never personally served with a copy of Plaintiff's Summons and Complaint. And . . . substitute service was not properly effectuated because at all relevant times, Corrine Giorgio was neither employed by me nor authorized to accept service of process as an agent on my behalf. Ms. Giorgio is employed by the title insurance company operating within a suite located at the 1900 Hempstead Turnpike office, which also offices a mortgage broker and another law firm." (Def.'s Affid. ¶ 4) [Doc. 28]

However, Defendant was served in accordance with Conn. Gen. Stat. § 52-59b(c), governing service of process on nonresident individuals, which states in pertinent part:

> Any nonresident individual . . . over whom a court may exercise personal jurisdiction . . . shall be deemed to have appointed the Secretary of the State as its attorney and to have agreed that any process in any civil action brought against the nonresident individual . . . may be served upon the Secretary of the State and shall have the same validity as if served upon the nonresident individual . . . personally. The process shall be served by the officer to whom the same is directed upon the Secretary of the State by leaving with or at the office of the Secretary of the State, at least twelve days before the return day of such process, a true and attested copy thereof, and by sending to the defendant at the defendant's last-known address, by registered or certified mail, postage prepaid, return receipt requested, a like true and attested copy with an endorsement thereon of the service upon the Secretary of the State.

Plaintiff's service of process on Defendant complied with all these requirements. There is no requirement of personal service, as the statute provides for service upon the Secretary of the State. Defendant must also be mailed a copy at his last known address, which can be a business address. *Goktepe*, 220 F.R.D. at 12. This was done. The statute does not require that Defendant actually receive the mailing that is sent to his last known address, although, as discussed above, the evidence in this case strongly suggests that Defendant did have actual notice of these proceedings, in addition to having been properly served.

The service mailings were sent to Defendant at 1900 Hempstead Turnpike, Suite 304, East Meadow, New York 11554. [See Docs. 4, 5, 22, 23] This is Defendant's address, as it appears on his law firm website. See http://www.kenpelsinger.com/contact.html. This is the same address that Defendant used on his letterhead in corresponding with the State of New York Grievance Committee on September 6, 2008 [Doc. 32, Ex. C] and with this Court on May 4, 2010, when he forwarded a courtesy copy of his reply brief. Certainly, he has publicly held this out to be his business mailing address, and continues to do so. It is simply inadequate for Defendant to say that he "does not regularly receive his mail because he is one of numerous tenants in the 1900 Hempstead Turnpike office suite" [Doc. 28 at 3-4] or that, because he

maintains a second office in the same town, he "regularly traveled back and forth between these two office locations and often did not receive [his] mail." (Def.'s Affid. ¶ 6) [Doc. 28] As an attorney, Defendant has a responsibility to ensure that he can readily and securely be reached at the law firm mailing address which he publicly represents as his, and to check his mail at that address regularly. Failure to do so is at his own risk and does not negate effective service on him. In addition, Plaintiff's counsel has attached an affirmation detailing her numerous contacts with Defendant regarding this case by telephone and email as well as by mail. [Doc. 31-1]

Defendant vehemently claims that he has a meritorious defense, that he himself was a victim of fraud, that Progressive is the sole culpable party, and that Plaintiff knew that and sued him nonetheless. Certainly, as an attorney, Defendant is aware that the lack of merit of a suit filed against an individual does not absolve that individual of the duty to appear and defend against it. The Court finds that Defendant was aware of this proceeding and willfully chose to ignore it, thereby effectively waiving any meritorious defenses he may or may not have had.[4] See *Solomon v. 318 Fashion, Inc.*, 1994 U.S. Dist. LEXIS 17883 at * 8 (S.D.N.Y. Dec. 13, 1994) ("Notwithstanding the fact that Lee has demonstrated two of the applicable factors, I decline to vacate the judgment because he has not met his burden of showing that his behavior was

---

[4] The Court does not find Defendant's protestations of innocence particularly compelling. Defendant claims repeatedly that he is "not a collection attorney." [Doc. 28, Def.'s Affid. ¶ 7] [Doc. 32, ¶ 2] He made the same representation to the State of New York Grievance Committee, elaborating that "my practice is limited to four areas, Foreclosure Solutions, Taxation, Bankruptcy and Complex financial matters." [Doc. 32, Ex. C] However, the allegations in the Complaint that Pelsinger filed against Progressive in New York state court seem to belie this claim. Pelsinger's New York complaint states, "*[Progressive] retained [Pelsinger] as an attorney for the purpose of advice and counsel in real estate matters, to handle real estate transactions and to draft legal papers to enforce unsecured debts owed by the public to certain credit card and other companies who were clients of [Progressive]*." [Doc. 32, Ex. D, New York Compl. ¶ 3] (emphasis added).

excusable not willful.")

Finally, the Court finds that Plaintiff will suffer prejudice if relief is granted to Defendant and the default judgment is set aside. Plaintiff has already suffered significant and unnecessary delay and expense in prosecuting this action and in attempting to enforce the judgment, of which Defendant was aware. Even if, as Defendant maintains, Plaintiff is not prejudiced, that is not dispositive of the motion to set aside the default, in light of the fact that the default was incurred willfully. See *Heymann*, 1996 U.S. Dist. LEXIS 14936 at *19 ("I find that the defendant's clearly willful conduct is sufficient to warrant denial [of] his motion, regardless of the degree to which Heymann would be prejudiced by a contrary result.").

Because service was properly made, Defendant's motion pursuant to Rule 60(b)(4) to set aside the default judgment as void for lack of personal jurisdiction on account of improper service is denied. Because Defendant's default was willful and intentional, and because Plaintiff suffered prejudice thereby, Defendant's motion pursuant to Rule 60(b)(1) to set aside the default judgment on account of mistake, inadvertence, surprise, or excusable neglect is also denied.

<u>Motion for Sanctions</u>

As noted above, Plaintiff has moved for sanctions against Defendant for his failure to comply with the Court's order granting Plaintiff's motion to compel Defendant to respond to post-judgment discovery regarding his income and assets, so that Plaintiff might collect the judgment. In the motion for sanctions, Plaintiff requested that the Court find Defendant in civil contempt, issue a warrant for Defendant's arrest, impose upon Defendant a fine of up to $1,000 for every day after the Court's order that Defendant fails to comply therewith, and award Plaintiff her costs and fees in maintaining the proceeding, to the extent they were not included in the

previous judgment. Aside from arguing that the default should be set aside and the arrest warrant vacated, Defendant has not otherwise responded to the motion for sanctions.

Accordingly, the following orders are entered. Defendant must pay the $10,185.73 judgment entered against him on July 13, 2009 [Doc. 17], representing $6,000.00 in damages, $3,500.00 in attorney's fees and $685.73 in costs. He must also pay post-judgment interest pursuant to 28 U.S.C. § 1961 on the period from the entry of judgment on July 13, 2009 until the judgment is satisfied. Plaintiff shall also recover in full the reasonable attorney's fees and costs that she has incurred since the entry of judgment in attempting to enforce it. Plaintiff's application for attorney's fees is due on or before **October 15, 2010**, and must contain contemporaneous time records that comply with the Second Circuit's requirements articulated in *New York Ass'n. of Retarded Children v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). By **September 24, 2010**, Defendant is ordered to make full payment of the July 13, 2009 judgment plus interest, or in the alternative, to have complied fully with post-judgment discovery [See Doc. 18] and cooperated in arranging a plan for payment, including having made the first payment by that date. Upon the parties' certification that Defendant has satisfied these requirements, the warrant for Defendant's arrest will be vacated; its execution remains stayed in the interim. A copy of this Ruling will be forwarded to the State of New York Grievance Committee to take such action in accordance as it deems appropriate.[5]

---

[5] In a letter to the Court dated May 3, 2010, Defendant states that he is not admitted to the bar of the State of Connecticut or of the United States District Court for the District of Connecticut. For that reason alone, the Ruling will not be sent to the Grievance Committee of this State.

Conclusion

For the reasons stated herein, Defendant's Motion to Set Aside the Default Judgment [Doc. 28] is DENIED and Plaintiff's Motion for Sanctions [Doc. 20] is GRANTED IN PART.

SO ORDERED.

Dated: New Haven, Connecticut

August 30, 2010

                                                                                            /s/ *Charles S. Haight, Jr.*
                                                                                            Charles S. Haight, Jr.
                                                                                            Senior United States District Judge